IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN M. SCHILLING, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>TRANSCOR AMERICA, LLC, *et al.*,<br><br>    Defendants.<br>_____/ | No. C 08-941 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

On February 12, 2010, the Court held a hearing on plaintiffs' motion for class certification. For the reasons set forth below, plaintiffs' motion will be GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Plaintiffs Kevin Schilling, John Pinedo and William Tellez filed this lawsuit against TransCor America, LLC ("TransCor"). TransCor is a Tennessee corporation licensed to do business in California, whose business entails the transportation of pretrial detainees and prisoners throughout the United States on behalf of federal, state and local governments. Plaintiffs allege that TransCor transports pretrial detainees and prisoners in conditions that amount to cruel and unusual punishment. Each of the named plaintiffs alleges that he was transported by TransCor for more than 24 hours and subjected to inhumane conditions during his journey, including being shackled and kept in a cage, and deprived of access to regular food, water, and bathrooms. The second amended complaint alleges two class claims for relief: (1) a claim under 42 U.S.C. § 1983 for violations of the Fourth, Eighth and Fourteenth Amendments, and (2) a claim under Cal. Civ. Code § 52.1, for violation of civil rights under California law.

The evidence shows that between February 14, 2006 and July 21, 2009,[1] thousands of prisoners[2] were transported for more than 24 continuous hours on at least one leg of their journeys. Plaintiffs assert that some of these prisoners were also picked up by a second vehicle, and transported for an additional period of more than 24 continuous hours. According to TransCor, prisoners in transit for more than 24 hours are transported on 19-, 23-, or 30-passenger transporters.[3] The 19- and 23-passenger transporters are staffed with four "transportation specialists," and the 30-passenger transporters are staffed with five specialists. Each crew is assigned to a 5-day transport, which originates from and returns to the same hub location. During a 5 day trip, prisoners are picked up and dropped off at various correctional facilities. Prisoners will sometimes be dropped off at a hub before reaching their final destination, and TransCor states that its goal is to "deliver all inmates within 10 days of pickup," which includes both transit and housing time. Def's Ex. 8 at 114-15; Ex. 9 at 18-19.

TransCor's policy and practice is that restraints, including handcuffs, belly chains, leg irons, interconnects and black boxes, are applied to all prisoners, with the exception that pregnant women are not required to wear a belly chain or shackles. An "interconnect" is a chain approximately two feet long that is used to connect two prisoners together. Handcuffs are attached to the belly chain to prevent the prisoner from raising his or her arms. The black boxes are placed over the links connecting a prisoner's handcuffs, and they restrict wrist movement.

Each TransCor transport vehicle is divided into compartments, or cages. Prisoners are locked inside the cages. Most transport vehicles have a toilet on board, and prisoners are permitted to use the toilets only when the vehicle is stopped and they are let out of their cage and escorted to the toilet by a TransCor employee. TransCor asserts that stops are made for bathroom breaks every 3 to 4 hours, and that prisoners are also allowed to use the restroom any time the transporter stops for a pick up or a drop

---

[1] The class period is February 14, 2006 to the present.

[2] The parties dispute whether TransCor's records can be interpreted as showing how many prisoners were transported, as opposed to the number of "instances of transport." According to TransCor, one prisoner could have multiple "instances of transport." In any event, there is no dispute that TransCor transported thousands of prisoners during the class period.

[3] There are also some prisoners transported on vans. That issue is discussed *infra*.

off. Prisoners remain in restraints and are chained to one another while using the toilet. Prisoners are advised against lying down in the transport vehicle, and if they sleep, they sleep sitting in their seats.

The parties dispute the extent to which prisoners are allowed to exercise. Plaintiffs assert that when the vehicle is stopped, prisoners are sometimes allowed to stand up and stretch, to the extent that they can in their restraints and while chained to one another. татьТrans Cor asserts that prisoners are encouraged to stand up and stretch during stops, and that prisoners are permitted to walk up and down the transporter's aisle, two at a time, during restroom breaks once those inmates who need to use the restroom have done so.

Prisoners are provided with "fast food" meals during a transport. TransCor asserts that water is available to prisoners on all transporters at any time upon request.

TransCor asserts that prisoners are issued TransCor uniforms upon boarding a transporter, while plaintiffs assert that prisoners are not given a change of clothes.[4] It is undisputed that there is no running water on the transporters, and prisoners are not allowed to brush their teeth or shave. TransCor asserts that prisoners are provided hand sanitizers and hand wipes to use after using the bathroom and before eating.

## LEGAL STANDARD

The decision as to whether to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23. *See* Fed. R. Civ. P. 23; *see also Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003). A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the requirements of Federal Rule of Civil Procedure 23(b) have been met. *See* Fed. R. Civ. P. 23; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that

---

[4] TransCor asserts that prisoners who are staying overnight at a hub are permitted to shower, shave, and wash their clothes. However, these prisoners are not members of the proposed class or subclass.

3

are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a).

A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b).

In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but, rather, whether the requirements of Rule 23 are met. *See Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The Court is obliged to accept as true the substantive allegations made in the complaint. *See In re Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982); *see also Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Therefore the class order is speculative in one sense because the plaintiff may not be able to later prove the allegations. *See Blackie*, 524 F.2d at 901 n. 17. However, although the Court may not require preliminary proof of the claim, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements. Courts may also consider the legal and factual issues presented by plaintiff's complaint." 2 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, 7.26 (4th ed.2005). Sufficient information must be provided to form a reasonably informed judgment on each of the requirements of Rule 23. *See Blackie*, 524 F.2d at 901 n. 17. In order to safeguard due process interests and the judicial process, the Court conducts an analysis that is as rigorous as necessary to determine whether class certification is appropriate. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

**DISCUSSION**

Plaintiffs seek to certify a class of "all pretrial detainees and prisoners who were transported by TransCor America LLC, its agents and/or employees, and forced to remain in the transport van for more

than 24 hours, whose claims are timely under California law, including the tolling provisions of California Code of Civil Procedure sections 352 and 352.1." Second Amended Compl. ¶ 18. Plaintiffs also seek to certify a subclass of pretrial detainees and prisoners who were transported in California. *Id*. ¶ 19.

Defendants oppose class certification on numerous grounds. First, defendants contend that the proposed class is not objectively ascertainable, and they raise specific objections to the inclusion of particular types of inmates in the proposed class and subclass. Second, defendants contend that the named plaintiffs are not typical or adequate. Third, defendants argue that while there are some common legal and factual issues, individual issues predominate such that class certification is not appropriate. Fourth, defendants argue that a class action is not a superior method of adjudication because of manageability problems and the interest of class members in pursuing individual actions. Finally, defendants contend that plaintiffs' claims under the California Tom Bane Civil Rights Act cannot be certified because that statute only provides for individual actions.

**I.       Challenges to scope and definition of class and subclass**

   **A.       "Objectively ascertainable" and tolling**

Defendants contend that the proposed class and subclass are not objectively ascertainable "to the extent they are defined by prisoners falling within the tolling provision of [California Code of Civil Procedure] § 352." Section 352 tolls the time to file a claim if the claimant was "under the age of majority or insane" at the time the claim accrued. Cal. Code Civ. Proc. § 352. Defendants argue that while a class member's age is objectively ascertainable, the Court would nevertheless be required to conduct individualized determinations about an inmate's length of minority status and release date. Defendants argue that making determinations about a class member's insanity is even more complicated because it would require an inquiry into each person's medical history and evidence that he or she was "incapable of caring for his or her property or transacting business or understanding the nature or effects of his or her acts" at the time of the transport. *Alcott Rehab. Hosp. v. Superior Court*, 93 Cal. App. 4th 94, 101 (2001). Defendants argue that simply because a prisoner was picked up or dropped off at a hospital for the mentally ill does not mean that the prisoner was "insane" under Section 352, because

5

a finding of insanity requires an inquiry into each person's medical history, and evidence that he was "incapable of caring for his or her property or transacting business or understanding the nature of his or her acts" at the time of transport. *Alcott Rehab. Hosp. v. Superior Court*, 93 Cal. App. 4th 94, 101 (2001). Plaintiffs respond that this standard – "incapable of caring for his or her property or transacting business or understanding the nature of his or her act" – is an objective one, and that "while lay opinion may or may not be sufficient to establish the requisite mental disability, the expert reports used to justify the potential plaintiffs' confinement should be available, and can be obtained during the claims process." Plaintiffs' Reply at 3:7-9.

The Court agrees with defendants that including inmates who were transported prior to the class period but whose claims have been tolled raises significant ascertainability problems. To determine whether a putative class member's claim is timely, the Court would need to evaluate each person's length of insanity or minority status, as well as prison release date. With regard to those persons whose claims are tolled on account of insanity, the tolling analysis would involve the further individualized inquiry about the degree and nature of the person's mental illness. The Court finds it appropriate to define the class to include only those pretrial detainees and prisoners who were transported between February 14, 2006 and the present because this class period will encompass all timely claims and is precise, objective and ascertainable.

### B. Federal prisoners

Next, defendants contend that the proposed class and subclass cannot include federal inmates because § 1983 only authorizes claims against state actors, and not against entities acting under color of federal law. *See Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987) ("There is no valid basis for a claim under section 1983, in that Daly-Murphy's allegations are against federal officials acting under color of federal law."). However, as plaintiffs correctly note, the issue is not whether a potential class member was a federal or state inmate, but rather whether TransCor was acting on behalf of a state or federal agency when transporting inmates. Plaintiffs provide the example of plaintiff William Tellez, who was transported from the Federal Penitentiary in Atwater, California, to the Las Vegas Metro Police Department pursuant to a writ issued on behalf of the Las Vegas Metro Police Department. TransCor's

Order Detail for that transport states that the "customer" was the Las Vegas Metro Police Department. Snell Decl. Ex. S at 1. The Court agrees with plaintiffs that because the "customer" is identified on each prisoner's Order Detail, the determination of whether TransCor was acting on behalf or a state or federal agency can easily be made during the claims process.

### C. Administrative remedies

Defendants also argue that the proposed class and subclass cannot include prisoners who failed to exhaust administrative remedies, as required by the Prison Litigation Reform Act. The PLRA requires that prior to bringing an "action with respect to prison conditions under section 1983," a prisoner confined in any jail or prison must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). However, administrative exhaustion is not required "when no pertinent relief can be obtained through the internal process." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005); *see also Kaemmerling v. Lappin*, 553 F.3d 669, 675 (D.C. Cir. 2008) (the Act's exhaustion requirement does not apply in a case "in which there is no administrative process to exhaust."). Because the failure to exhaust is an affirmative defense, defendants have the burden of raising and proving that an administrative remedy is available. *Id*. at 936.

Plaintiffs contend that the evidence relied on by defendants fails to prove that an administrative remedy was available to plaintiffs. The Court agrees. Defendants have submitted excerpts from the depositions of Sondra Pedigo, who was designated by TransCor as the person most knowledgeable about prisoner complaints, and Charles Westbrook, TransCor's Director of Operations. Ms. Pedrigo testified that there is "not a standard form for a prisoner to make a complaint," and that "Normally, if there is a prisoner complaint, they'll wait until they get to their facility they're being dropped off at, and that's where they'll make their complaint. And then once they make that complaint, then that's when we get a phone call in our corporate office from that facility." Snell Supp. Decl. Ex. HH (Pedigo depo. at 171:14-24). Ms. Pedigo did not know whether records were kept of those complaints. *Id*. at 171:25-172:7. Mr. Westbrook testified that he has never seen any complaints, and that "if [prisoners] have any complaints, what they're told is, once you get to your facility – once you get to your destination, you can file a grievance at that point." Def's Ex. 11 (Westbrook depo. at 42:12-14). When asked, "Do you

7

know what happens to prisoner grievances that may be filed at the institutions to which they are transported?," Mr. Westbrook answered, "Again, sir, that's not my field." *Id*. at 42:15-19. Defendants have also submitted the deposition testimony of Fred Wisdom, who trains TransCor employees, and who testified that he trains employees to record prisoner complaints on incident reports, which are then sent to headquarters. Def's Ex. 6 (Wisdom depo. at 24:1-25:1). This evidence falls far short of showing that there was an internal TransCor grievance process available to inmates who had complaints about their transports. To the extent defendants assert that prisoners should exhaust their administrative remedies by filing complaints at the institutions to which they are dropped off or picked up, TransCor has made no showing that the institutions would be able to address or remedy the alleged deficiencies in TransCor's policies and procedures. *Cf. Malik v. District of Columbia*, 574 F.3d 781, 785 (D.C. Cir. 2009) (examining correctional facility's grievance policy and finding that institutional transfers were not grievable matters).

Defendants also rely on *Malik v. District of Columbia*, 512 F. Supp. 2d 28 (D.D.C. 2007), *rev'd on other grounds*, 574 F.3d 781. In *Malik*, a pro se prisoner[5] sued the District of Columbia, a correctional services company retained by the District, and TransCor, claiming Eighth Amendment violations during a 40-hour bus ride transferring the inmate between two facilities. The court found that the inmate failed to exhaust administrative remedies as to the District and the correctional services company, and denied TransCor's motion for summary judgment on the ground that there was a genuine issue of material fact as to whether the plaintiff had exhausted remedies under the company's informal grievance policy. *Id*. at 32. In *Malik* the plaintiff claimed that he had filed a complaint, and it did not appear that the then-*pro se* plaintiff challenged the adequacy of the grievance process itself. Moreover, in *Malik* TransCor submitted evidence of an informal policy whereby inmates were directed to send complaints to particular departments or people, and TransCor employees were assigned to investigate complaints. *Id*. at 32. There has been no such factual showing here. Finally, even if TransCor had administrative remedies available to inmates, plaintiff Schilling was not required to exhaust those

---

[5] The 2007 district court decision states that the plaintiff was *pro se*. At the February 12, 2010 hearing, defense counsel, who is also defense counsel in *Malik*, stated that the *Malik* plaintiff is currently represented by counsel.

8

remedies under the PLRA because he was not an inmate at the time he filed this lawsuit. *See Talamantes v. Levya*, 575 F.3d 1021, 1024 (9th Cir. 2009).

### D. Physical injury

Defendants also argue that the class and subclass cannot include prisoners who suffered no physical injury. The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Ninth Circuit has held that the injury "need not be significant but must be more than *de minimis*," and that "[t]his interpretation reflects Congress's intent in passing the PLRA . . . to curtail frivolous prisoner litigation . . . [and] to reduce the burgeoning volume of prisoner litigation in the federal courts." *Oliver v. Keller*, 289 F.3d 623, 627-28 (9th Cir. 2002).

Plaintiffs contend that the "physical injury" requirement of the PLRA is met because the named plaintiffs allege that they suffered physical injuries as a result of their treatment by TransCor, and it is not necessary for every member of the class to demonstrate "physical injury." *See Kelsey v. County of Schoharie*, No. 1:04-CV-299, 2007 WL 603406, at *11 (N.D.N.Y. Feb. 21, 2007) ("The language of § 1997e(e) requires a showing of physical injury only in suits brought, i.e. commenced or filed, by prisoners, not those in which they join as members of a class action."), *rev'd on other grounds*, 567 F.3d 54 (2d Cir. 2009). Defendants have not cited any authority holding that the physical injury requirement applies to class members. In the absence of any such authority, the Court finds that the physical injury requirement is satisfied because the named plaintiffs allege physical injury. This interpretation is consistent with the intent of the PLRA, because it ensures that the lawsuit is not frivolous, and requiring every class member to meet the physical injury requirement would not reduce prisoner litigation. Moreover, claims for declaratory and injunctive relief are unaffected by § 1997e(e); therefore, the statute "does not nullify the Eighth Amendment by leaving violations of it without a remedy." *Zehner v. Trigg*, 133 F.3d 459, 464 (7th Cir. 1997); *accord Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Davis v. District of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998).

9

### E. "24 hour" aspect of class definition

Defendants contend that the class and subclass definition is vague because it does not specify whether it includes only those individuals who were on a transporter for more than 24 continuous hours, or whether it also includes individuals whose total transport was more than 24 hours, but who were taken off a transporter to switch vehicles or to be housed a hub for some period of time during the transport.

Plaintiffs respond that there is nothing vague about the definition because the total amount of time of each prisoner's journey is objectively measurable, and defendants' computerized data makes it possible to calculate the precise length of each prisoner's transport, including each segment of a transport. Plaintiffs clarify that they are seeking certification of a class of prisoners who were transported continuously for more than 24 hours and who were not allowed to sleep overnight in a bed, even if those prisoners switched vehicles at some point during their journey. To the extent there is any ambiguity in the proposed definition, this order clarifies that the class and subclass include those individuals.

### F. Van transports

Defendants contend that individuals who were transported in vans (as opposed to the 19-, 23-, or 30-passenger "transporters") should not be included in the class and subclass for a number of reasons. First, defendants contend that plaintiffs never requested data on van transports during class discovery. However, plaintiffs state that they requested documents reflecting, *inter alia*, the types of vehicles in which prisoners were transported.

Second, defendants assert that as a factual matter, prisoners transported in vans do not meet the class definition because van transports are limited to 15 hours, and if a prisoner has not reached his destination within 15 hours, he is housed overnight and picked up the next day. However, defendants acknowledge that "occasionally are they transferred to another van," Opposition at 14:22-23, and thus there could be individuals who were transported for more than 24 hours by van. Defendants also object that TransCor's system does not contain information about whether a van transport included a "Rest Over Night," and therefore TransCor cannot provide a list of van order segments that reflects only those

10

prisoners who were in transit for more than 24 hours. Plaintiffs assert, however, that TransCor has other records, such as Order Detail Reports, Trip Reports, Activity Logs, and Trip Manifests, from which it can be determined whether prisoners transported by van were housed in a facility long enough to sleep in a bed. Based on defendants' admission that, at least on occasion, prisoners transported in vans have been transported for more than 24 hours, and the existence of records by which these prisoners can be identified, the Court finds it appropriate to include these prisoners in the class and subclass.

## II.  Rule 23(a) requirements: numerosity, commonality, typicality and adequacy

### A.  Numerosity

Based upon TransCor's records, the estimated total number of members of the proposed class is approximately 16,000, and the total number of members of the proposed subclass of prisoners transported in California is approximately 4,800. Defendants do not contest numerosity, and the Court finds that his requirement is met.

### B.  Commonality

Defendants concede that there are some common issues of law and fact, and instead contend that plaintiffs cannot demonstrate the Rule 23(b)(3) requirement that common issues predominate over individualized questions. The Court addresses this issue *infra*.

### C.  Typicality and adequacy

Rule 23(a) requires that plaintiffs show that the named plaintiffs' claims are typical of those of the class, and that the named plaintiffs will adequately represent the class. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id*.

Defendants contend that the named plaintiffs are not typical or adequate for a variety of reasons,

11

discussed below. Defendants do not challenge the qualifications of plaintiffs' counsel, and the Court finds that the plaintiffs' counsel is qualified and able to litigate this case.

### 1. John Pinedo

Defendants assert that plaintiff Pinedo is not typical because his transport was only 23 hours and 28 minutes, and thus he cannot represent a class of prisoners who were transported for more than 24 hours. In so arguing, defendants assert that the TransCor "PECS"[6] report for Pinedo's transport, which shows that he was in transit for 24 hours and 23 minutes, is inaccurate and overstates the time of the transport. Defendants have submitted the declaration of James Crouch, TransCor's Director of Planning, which states that the time of pick up contained on a report is the time that the vehicle arrived at the facility, not the time that the prisoner is actually restrained and put in TransCor's care. Def's Ex 1 (Crouch Decl. ¶¶ 46). Defendants assert that the accurate pick up and drop off times can be determined from the "Activity Logs" kept for each transport.

Plaintiffs respond that defendants are asking the Court to ignore TransCor's business records, which purport to show the "actual time" of inmate pick up and drop off, and to rely instead on Mr. Crouch's "understanding" and "expectation." Plaintiffs also note that notwithstanding defendants' assertions about the inaccuracy of the times reported in the PECS system, defendants use those same PECS records when calculating the length of transports. *See id*. ¶¶ 31-36. The Court finds that Mr. Crouch's testimony does not outweigh TransCor's business records, which TransCor itself relies upon, and thus that Mr. Pinedo may represent the class.

Defendants also contend that Mr. Pinedo is not an adequate representative because he had not read the complaint prior to the time it was filed. However, this fact does not render Mr. Pinedo inadequate to represent the class, and as plaintiffs note, Mr. Pinedo had read the complaint by the time he was deposed, and plaintiffs assert that Mr. Pinedo has taken an active role in the case. Defendants do not contend that Mr. Pinedo has any conflicts of interest with the class, and the Court finds that he is an adequate named plaintiff.

---

[6] "PECS" stands for TransCor's proprietary Prisoner Extraction and Control System, which is used to track transport orders and plan trips. Def's Ex. 1 (Crouch Decl. ¶ 6).

12

## 2. Plaintiff William Tellez

Defendants argue that Mr. Tellez is not typical or adequate because he was and is a federal inmate. As explained *supra*, however, TransCor transported Mr. Tellez to and from the Las Vegas Metro Police Department, and TransCor's Order Detail states that its "customer" was the Las Vegas Metro Police Department. Snell Decl. Ex. S at 1. Thus, absent evidence to the contrary, TransCor was acting on behalf of a state agency when it transported Mr. Tellez, and thus he can maintain a § 1983 claim against TransCor.

Defendants also challenge Mr. Tellez on the ground that he became involved in this case after reading about it in Prison Legal News. This fact alone does not render Mr. Tellez an inadequate plaintiff, and defendants do not assert that Mr. Tellez has any conflicts with the proposed class. The Court finds that he is an adequate named plaintiff.

## 3. Plaintiff Kevin Schilling

Defendants challenge plaintiff Schilling's typicality on the ground that he alleges he was assaulted by defendants Smith and Brummett during his transport. Defendants argue that Schilling's individual assault claims are unique to him and thus somehow render him atypical. However, Rule 23 permits actions that include both class and individual claims, and such cases are common. *See* Fed. R. Civ. Proc. 23(c)(4); *Probe v. State Teachers' Retirement Sys.*, 780 F.2d 776, 780 (9th Cir. 1986). Defendants have not identified any particular problems with the concurrent litigation of the class claims and Schilling's individual claims, and the Court finds that Schilling's individual claims do not bar him from acting as a named plaintiff.

## III. Rule 23(b)(3) requirements

### A. Common vs. individual issues

Defendants contend that plaintiffs cannot show that "questions of law or fact common to class members predominate over any questions affecting only individual members," as required by Rule 23(b)(3). Defendants contend that although there are common issues as to the nature of TransCor's policies and procedures, whether those policies and procedures violated a prisoner's constitutional rights

13

will involve individualized, fact-specific determinations. For example, defendants argue that a prisoner's Fourth Amendment excessive force claim challenging the use of restraints will depend on the facts and circumstances of his transport, including whether he was convicted of or charged with a violent crime, and whether he had a history of escape attempts. Defendants argue that the Eighth Amendment claims involve even more individualized inquiries about whether each class member was adequately provided food, fluids, exercise, hygiene, and medical care. Defendants note that the three named plaintiffs had different experiences with regard to how many meals and bathroom breaks they were provided during their transports.

Plaintiffs respond that minor variations in inmates' experiences during their transports should not defeat certification because the predominant issue in this case is whether defendants' policy of denying prisoners "rest over night" while the prisoners remain in restraints in a vehicle violates the inmates' constitutional rights. Plaintiffs rely on cases in which similar claims were certified, such as *Thomas v. Baca*, 231 F.R.D. 397 (C.D. Cal. 2005), in which the court certified a class of county jail detainees who alleged that their constitutional rights were violated when the sheriff's department required them to sleep on the floor. *See id*. at 402 ("The central issue to a claim brought by any potential class member is whether the fact that LASD allegedly required him to sleep on the jail floor permits him to recover under § 1983.").

In *Tyler v. Suffolk County*, 253 F.R.D. 8 (D. Mass. 2008), the court certified a class of inmates at a state prison who alleged that the conditions of their confinement violated the Eighth Amendment because they were denied free access to toilet facilities. The inmates were housed in "dry" cells that were not equipped with toilets, and when the inmates were locked in their cells from 11:00 pm to 7:00 am, they could only use the toilets if permitted by the guards on duty. *Id*. at 9. The plaintiffs alleged that, due to either the guards' inattention or malice, "their bathroom access was unreliable and they were, at times, forced to urinate and defecate into bags or bottles which could not be emptied until the following morning." *Id*. The defendants argued, as TransCor does here, that individual issues predominated because the court would be required to conduct an individualized inquiry about whether each inmate was actually denied access to the toilet facilities. The court rejected that argument, holding "[t]he government's objections extend beyond the bounds of class certification and address, instead, the

14

merits of the plaintiffs' claims. The plaintiffs' position is that the system of bathroom access under which Building 4 operated is per se a violation of their Eighth Amendment rights. The questions raised by the defendants of whether the system itself was unlawful and how it was modified over time present issues of law and fact, respectively, which are common to all class members." *Id.* at 10. The court also held that the objections raised by the government "relates to the divergent damages among class members rather than to differences in liability." *Id.* at 11.

Similarly, in *Dunn v. City of Chicago*, 231 F.R.D. 367 (N.D. Ill. 2005), the court held that the commonality requirement was satisfied by a class of detainees who were held in interrogation rooms for more than 16 hours and who alleged they were subjected to inhuman conditions. The plaintiffs alleged that they were at the "whim" of officers and detectives for food, water, and access to bathroom facilities, and that they became sleep-deprived because the metal benches in the interrogation rooms were not long enough for an adult to lie down on. *Id.* at 370-71. The plaintiffs challenged "(1) the maintenance of an unconstitutional, written policy requiring shackling of detainees held in interrogation rooms; (2) the failure to enact policies limiting the amount of time a detainee may be held in an interrogation room; (3) the failure to establish policies for food services and other humane treatment for persons held in the rooms; (4) the failure to provide proper sleeping facilities for persons held in the rooms, including bedding; and (5) the deliberately indifferent failure to correct a repeated pattern of neglect of the human needs of persons held in interrogation rooms." *Id.* at 372. The defendants opposed certification by arguing that detainees were not subjected to standardized conduct or conditions, and they submitted evidence showing, *inter alia*, that some detainees had been provided food, water, and access to bathrooms. *Id.* The court held that these factual differences did not defeat commonality: "The fact that certain detainees were treated marginally better on an ad hoc basis than others does not alter plaintiffs' allegations that they were subject to the standard practice of prolonged detention in interrogation rooms rather than the lock-up without a legitimate police purpose, and that the interrogation rooms are inherently unfit for human occupancy for more than a few hours." *Id.*[7]

---

[7] The *Dunn* court did not certify the class because the named plaintiff's claims were time-barred. *Id.* at 374. The court stated that it would consider allowing a new named plaintiff to represent the class.

15

Plaintiffs' claims are similar to those advanced in *Tyler*, *Baca*, and *Dunn*, and the Court agrees with the reasoning of those courts that any factual differences in how class members were treated do not defeat certification. Plaintiffs challenge the conditions to which they were subjected during 24 hour transports, and it is undisputed that all inmates are restrained during such transports and not provided with a "rest over night." As in *Baca* and *Dunn*, plaintiffs challenge the failure to enact policies to ensure adequate access to food, water, and bathroom facilities, and they allege that as a result of such failures, they have been subject to the whim of TransCor employees responsible for each transport. In order to establish liability, plaintiffs must objectively show that they were deprived of something "sufficiently serious." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009). Whether inmates who have been transported for more than 24 hours and who are not allowed to sleep overnight have been deprived of something "sufficiently serious" can be determined on a classwide basis. While there is also a subjective component to the analysis in that inmates must also show that a deprivation occurred with deliberate indifference the inmates' needs, *id.*, that inquiry does not mean that the legality of policies and practices applied to all inmates cannot be litigated on a class basis.

Defendants' reliance on *Pierce v. County of Orange*, 519 F.3d 985, 993-94 (9th Cir. 2008), *amended and superseded on denial of reh'g,* 536 F.3d 1190 (9th Cir. 2008), is unavailing. In *Pierce*, the Ninth Circuit held that the district court did not abuse its discretion when it decertified a damages class estimated as large as 180,000 pretrial detainees because, *inter alia*, class membership was "highly fluid and indefinite" and it was undisputed that County records were incomplete and unreliable. *Id*. However, *Pierce* did not hold that classes challenging prison conditions could not be certified, and in fact *Pierce* involved class-wide liability determinations on claims challenging prison conditions. *See generally id*.

**B.     Superior method of adjudication**

Rule 23(b)(3) also requires that a class action be superior to other methods of adjudication. Defendants contend that the superiority requirement is not met because there are at least two other pending lawsuits against TransCor that raise similar claims. However, as plaintiffs note in their reply, both of these cases (*Bagent v. Pierce*, CV06-1842 (E.D. Cal.)) and *Myers v. TransCor America LLC*,

CV 08-00656 (M.D. Tenn.)) involve *pro se* litigants who are proceeding *in forma pauperis*. TransCor also cites a number of cases that have been dismissed against TransCor; those cases were also largely litigated by *pro se* plaintiffs. Rather than suggesting that a class action is not a superior method of adjudicating these claims, these cases indicate that a class action with the class represented by qualified counsel, is superior to numerous individual *pro se* cases.[8]

## IV. Tom Bane Civil Rights Act

Defendants contend that plaintiffs' claims under the Tom Bane Civil Rights Act cannot be certified. The Bane Act provides that "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution . . . has been interfered with or attempted to be interfered with [through threats, intimidation or coercion] may institute or prosecute in his or her own name and on his or her own behalf a civil action for damages." Cal. Civil Code § 52.1(b). Defendants argue that under the plain language of the Bane Act, an individual can only bring a claim "in his or her own name and on his or her own behalf," and that the Bane Act does not authorize a representative action.

There is a split of authority regarding whether a class action can be brought under the Bane Act. Defendants rely on *Taggart v. Solano County*, CIV-S-05-0783 DFL, 2005 WL 3325752 (E.D. Cal. Dec. 6, 2005), in which the court held that the structure and language of the statute does not authorize individuals to bring representative actions. The *Taggart* court noted that Section 52.1(a) authorizes the Attorney General, district attorneys, and city attorneys to bring claims "in the name of the people of the State of California against a person who interferes with the exercise or enjoyment of the rights of an individual or individuals," while Section 52.1(b) specifies that an individual may bring a civil action "on his or her own behalf." *Id*. at *4. In contrast, plaintiffs rely on *Craft v. County of San Bernadino*, No. EDCV 05-359-SGL, 2006 WL 4941829 (C.D. Cal. Mar. 23, 2006), which reached the opposite conclusion and found *Taggart* "less than persuasive." *Id*. at *3. The *Craft* court found that the term "on his or her own behalf" in subsection (b) "may more simply be read as a means to distinguish itself from

---

[8] Defendants raise a number of other arguments about why a class action is not superior. These arguments are largely duplicative of arguments addressed *supra* – such as defendants' arguments about the ascertainability of the class and the predominance of individual issues – and thus will not be repeated here.

17

subsection (a), which authorized suits by the state Attorney General for statutory violations," rather than a limitation on class actions. *Id.* The court found significant "the fact that subsection (g) makes clear that any of the remedies available under section 52.1 are in addition to 'any other action, remedy, or procedure that may be available to an aggrieved individual under any other provision of law.' Such 'other remedy' includes that provided by California Code of Civil Procedure section 382, the class action statute." *Id.* (quoting Cal. Civ. Code § 52(g)). The Court agrees with the analysis of the *Craft* court, and finds that the Bane Act permits class claims because there is no language expressly prohibiting class actions, and because of the broad language of § 52(g) providing that the Bane Act remedies are in addition to other available remedies.

Defendants also contend that the Bane Act claim cannot be certified because the Bane Act requires an individualized analysis as to whether each inmate was threatened, intimidated or coerced. *See* Cal. Civ. Code § 52.1(b). However, plaintiffs have alleged that all inmates were handcuffed and shackled. These allegations are sufficient to meet the "coercion" element of a Bane Act claim. *See Martin v. County of San Diego*, 650 F. Supp. 2d 1094, 1108-09 (S.D. Cal. 2009).

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiffs' motion for class certification. (Docket No. 90). The Court certifies the following class and subclass:

1. A class of all pretrial detainees and prisoners who were transported by TransCor America LLC, its agents and/or employees between February 14, 2006 and the present, and who were forced to remain in restraints in the transport vehicle for more than 24 hours without being allowed to sleep overnight in a bed. The class includes pretrial detainees and prisoners who were removed from one transport vehicle and placed directly onto another, without being housed overnight, whose combined trip lasted more than 24 hours. The class only includes those pretrial detainees and prisoners who were transported by TransCor on behalf of a state agency, and does not include pretrial detainees and prisoners who were transported on behalf of a federal agency.

2. A subclass of all pretrial detainees and prisoners who were transported by TransCor

America LLC, its agents and/or employees in the State of California between February 14, 2006 and the present, and who were forced to remain in restraints in the transport vehicle for more than 24 hours without being allowed to sleep overnight in a bed. The class includes pretrial detainees and prisoners who were removed from one transport vehicle and placed directly onto another, without being housed overnight, whose combined trip lasted more than 24 hours. The class only includes those pretrial detainees and prisoners who were transported by TransCor on behalf of a state agency, and does not include pretrial detainees and prisoners who were transported on behalf of a federal agency.

The Court also appoints attorneys Andrew C. Schwartz, Karen L. Snell, and Mark E. Merin as class counsel.

Counsel for plaintiffs and defendants shall meet and confer and, **no later than March 12, 2010,** submit a joint form of proposed Notice and plan for class notification.

**IT IS S1O ORDERED.**

Dated: February 16, 2010

SUSAN ILLSTON
United States District Judge