IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN M. SCHILLING, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>TRANSCOR AMERICA, LLC, *et al.*,<br><br>    Defendants.<br>                                                          / | No. C 08-941 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Currently before the Court are the parties' cross motions for summary judgment. The Court held argument on the motions on July 27, 2012, and having considered the arguments of the parties and the papers submitted, the Court GRANTS defendants' motion as to plaintiffs' class claims and DENIES plaintiffs' motion.

**BACKGROUND**

**1.    Procedural Background**

Plaintiffs Kevin Schilling, John Pinedo and William Tellez filed this lawsuit against TransCor America, LLC ("TransCor"). TransCor is a Tennessee corporation licensed to do business in California, whose business entails the transportation of pretrial detainees and prisoners throughout the United States on behalf of federal, state and local governments.[1]

Plaintiffs allege that TransCor transports pretrial detainees and prisoners in conditions that

---

[1] The Second Amended Complaint also names as defendants Sgt. John Smith and Officer John Brummett, employees and/or agents of TransCor who allegedly assaulted Plaintiff Schilling. Second Amended Complaint, ¶ 24.

amount to cruel and unusual punishment. Each of the named plaintiffs alleges that he was transported by TransCor for more than 24 hours and subjected to inhumane conditions during his journey, including being shackled and kept sitting upright, thereby being prevented from sleeping, and also deprived of access to toilets and sanitation facilities.[2] The Second Amended Complaint alleges two class claims for relief: (1) a claim under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments, and (2) a claim under Cal. Civ. Code § 52.1 (the Bane Act) for violation of civil rights under California law.

On February 16, 2010, the Court granted in part plaintiffs' motion for class certification and certified the following classes:

> 1.  A class of all pretrial detainees and prisoners who were transported by TransCor America LLC, its agents and/or employees between February 14, 2006 and the present, and who were forced to remain in restraints in the transport vehicle for more than 24 hours without being allowed to sleep overnight in a bed. The class includes pretrial detainees and prisoners who were removed from one transport vehicle and placed directly onto another, without being housed overnight, whose combined trip lasted more than 24 hours. The class only includes those pretrial detainees and prisoners who were transported by TransCor on behalf of a state agency, and does not include pretrial detainees and prisoners who were transported on behalf of a federal agency.
>
> 2.  A subclass of all pretrial detainees and prisoners who were transported by TransCor America LLC, its agents and/or employees in the State of California between February 14, 2006 and the present, and who were forced to remain in restraints in the transport vehicle for more than 24 hours without being allowed to sleep overnight in a bed. The class includes pretrial detainees and prisoners who were removed from one transport vehicle and placed directly onto another, without being housed overnight, whose combined trip lasted more than 24 hours. The class only includes those pretrial detainees and prisoners who were transported by TransCor on behalf of a state agency, and does not include pretrial detainees and prisoners who were transported on behalf of a federal agency.

February 16, 2010 Order [Docket No. 110] at 18-19.

Defendants moved for clarification of the Court's class certification Order and/or decertification. On July 9, 2012, the Court denied that motion, and affirmed the certification of plaintiffs' "Eighth and Fourteenth Amendment claims regarding the use of restraints, lack of overnight rest, lack of access to sanitation facilities and inadequate provision of food during transportation." Docket No. 200 at 2.

Plaintiffs now move for partial summary judgment on plaintiffs' first claim for relief; for violation of Eight and Fourteenth Amendment rights based on TransCor's policy and practice of: (1)

---

[2] The Second Amended Complaint also contains allegations regarding inadequate provision of water and food, but plaintiffs do not rely on those allegations in moving for summary judgment.

keeping prisoners[3] in transport vehicles for more than 24 hours, without rest overnight; (2) restraining prisoners in handcuffs with black boxes, leg irons, waist chains, and connector chains; and (3) restricting prisoner's access to toilet and sanitation facilities. Plaintiffs also move for summary judgment on their second claim for relief under California's Bane Act.

Defendants oppose and also cross-move for summary judgment, arguing that the conditions plaintiffs complain of are not sufficiently serious deprivations to support an Eight Amendment violation, but even if they were, legitimate security concerns justified those deprivations. Defendants also argue that plaintiffs have failed to prove and cannot satisfy the independent "interference" requirement of the Bane Act.[4]

**2.     Factual Background**

The following facts are not in dispute. Between February 14, 2006 to date,[5] thousands of prisoners and pretrial detainees were transported by TransCor for more than 24 continuous hours on at least one leg of their journeys. From 2006 though the end of 2008, TransCor operated a "hub and spoke" system of prisoner transportation, providing both "Extradition Services" (typically orders to move a single prisoner from one point in the county to another distant jurisdiction) and "Special Operations" (moves of a larger number of prisoners from one secured facility to another). Affidavit of Curtiss Sullivan ("C. Sullivan Aff.," Docket No. 95-1 at 8), ¶¶ 20, 22. Ideally, the Extradition Trips were designed to last no longer than 108 hours to ensure the crew did not violate the Department of Transportation's "hours of service" regulations. Third Affidavit of James Crouch ("Crouch Aff.," Docket No. 95-1 at 18), ¶ 5. Prisoners, however, could be in transit for more than five days. Declaration of Jack Atherton ("Atherton Decl.", Docket No. 144), ¶ 7. The trips were designed to depart from one hub, follow a circular route, and return to the same hub. Crouch Aff., ¶ 5. TransCor asserts

---

[3] The class consists of both prisoners and pretrial detainees. However, the Court will refer to them collectively as "prisoners."

[4] Plaintiffs and defendants move for summary judgment on all claims except for plaintiff Schilling's individual Fourth Amendment excessive force claim.

[5] The class period is February 14, 2006 to the present.

– and plaintiffs do not dispute – that for Extradition Services after February 1, 2006: 19% of "order segments" were less than 30 hours; 39% were less than 36 hours; 55% were less than 42 hours; and 68% were less than 48 hours. Crouch Aff., ¶ 10.[6] The median order segment duration was 39.78 hours. *Id*.

In order to facilitate transport to a prisoner's final destination, prisoners are sometimes dropped off – housed or "stashed" – at correctional facilities or TransCor "hubs" overnight. When housed, the facilities are expected to provide prisoners with medical examination, food, clothes, laundry and recreation. C. Sullivan Aff., ¶¶ 23, 26. After being housed, the prisoners are then loaded onto different transporters for the next stage of their transfer. TransCor's goal is to "deliver all inmates within 10 days of pickup," which includes both transit and housing time. Affidavit of W. Ken Katsaris (Katsaris Aff., Docket No. 145), ¶ 3. TransCor places no limit on the amount of time a prisoner can remain in transport vehicles prior to overnight housing or delivery to the destination. *Id*.

At the end of 2008, TransCor stopped Extradition Services to focus instead on local transports serving correctional facilities near its hubs (Defined Services), but TransCor continues to provide its Special Operations mass-transit services, directly from one location to another. C. Sullivan Aff., ¶ 21; Crouch Aff., ¶ 3. Special Operations are provided for entities, including the State of Vermont and the California Department of Corrections, which "request" that their prisoners be moved directly from origin to destination without stops. Crouch Aff., ¶ 12. Some of these Special Operations trips last under 24 hours and some last 31 - 36 hours. *Id*., ¶¶ 16-18.

TransCor's policy and practice is that restraints, including handcuffs, belly chains, leg irons, interconnects and black boxes, are applied to all prisoners, with the exception that pregnant women are not required to wear a belly chain or shackles. C. Sullivan Aff., ¶ 14. An "interconnect" is a chain approximately two feet long that is used to connect two prisoners together. Handcuffs are attached to the belly chain to prevent the prisoner from raising his or her arms. The black boxes are placed over the links connecting a prisoner's handcuffs and they restrict wrist movement.

---

[6] 26% lasted between 48 and 72 hours; 6% lasted between 72 and 96 hours and 0.25% lasted longer than 96 hours. Crouch Decl., ¶ 10.

TransCor's policy and practice is to train and require Transportation Specialists[7] to check the prisoners' restraints at each stop. If an inmate complains about the tightness of his or her restraints and swelling is present, Transportation Specialists will report the incident to their supervisors and, if approved, are allowed to modify the restraints, use larger restraints, use flexible Grip restraints, or even remove an entire portion of the restraint system. C. Sullivan Aff., ¶ 14; Expert Report of George Earl Sullivan (G.E. Sullivan Report, Docket No. 195-2 at 2)., ¶ 24.[8] The use of the restrains at issue can lead to swelling of extremities and numbness, as well as abrasions and lacerations in some instances. Katsaris Aff., ¶ 10; Atherton Decl., at 10. Despite TransCor's policy of having its Transportation Specialists check on prisoners' restraints during stops, instances of excessive swelling, abrasions, and skin being rubbed raw by the restraints occurred and TransCor was aware of these instances. *See* Plaintiffs' Opposition at 15-16 (citing deposition testimony of former TransCor CEO). TransCor has no written policy or practice stating the maximum number of hours a prisoner can be held in restraints without a break. Katsaris Aff., ¶ 3.

Each of TransCor's transport vehicles is divided into compartments or cages. Prisoners are locked inside the compartments and seated in leather chairs. The transports have televisions which show movies during the day. C. Sullivan Aff., ¶ 16. No movies are shown between the hours of 10:00 pm and 6:00 am. *Id.* The transport vehicles have a chemical toilet on board, and prisoners are permitted to use the toilet only when the vehicle is stopped and they are escorted to the toilet by a TransCor employee, along with the other prisoner they are chained to. C. Sullivan Aff., ¶ 16. Stops are made every 3.5 to 4 hours, and prisoners are also allowed to use the toilet any time the transporter stops. Supp. Snell Decl., Ex. 3 at 116. Prisoners remain in restraints and are chained to one another while using the toilet. Other than the toilet, prisoners do not have access to sanitation facilities on the transporters. There is no running water and prisoners are provided with hand sanitizer after using the toilet and before meals. C.

---

[7] "Transportation Specialists" are TransCor employees who are responsible for driving and guarding the prisoners.

[8] Four of the nine class members who were deposed testified that they had their restraints altered. *See* Defendants' Exhibit 5 at 56, 59-60 (Arno restraints altered after complaint); Ex. 6 at 61 (Kincheloe restraints altered after complaint); Ex. 7 at 45-46 (Wright restraints altered after complaint); Ex. 15 at 115, 140 (Pinedo not fitted with a black box).

Sullivan Aff., ¶ 16. TransCor's policy is not to provide prisoners with soap, tooth brushes or the ability to shave on the transporters, because of security concerns. C. Sullivan Aff., ¶ 27. During transit, the prisoners are not allowed to change clothes, although if a prisoner is housed during his or her trip, the prisoner's clothes will be laundered. *Id.*, ¶ 26.

TransCor's policy is to advise prisoners against lying down in the transport vehicle to sleep, due to possibility of injury and the difficulty of being chained to another prisoner. Katsaris Aff., ¶ 6. Therefore, if prisoners sleep, they sleep sitting in their seats. *Id.*; *see also* Atherton Decl., ¶¶ 14-15. The ability to sleep varies depending on the prisoner, the number of stops the transporter makes and other factors. TransCor's policy is to allow prisoners to stand up and stretch – within the limits of their restraints and dependent upon the agreement of the prisoner they are chained to – during stops. Katsaris Aff., ¶ 7. Prisoners are permitted to walk up and down the transporter's aisle, two at a time, during restroom breaks once those inmates who need to use the restroom have done so. *Id.*

The parties dispute why overnight housing was not provided. TransCor asserts that it was not able to house prisoners at local detention facilities because of jail overcrowding and a lack of facilities that could separately house the TransCor prisoners in appropriate accommodations. C. Sullivan Aff., ¶¶ 23-24. In particular, TransCor asserts that only one California facility, in Southern California, agreed to provide housing services for TransCor prisoners. Crouch Aff., ¶ 11. As a result, TransCor secured larger vehicles with "sleeper berths" for the Transportation Specialists, so that TransCor could continue to move the prisoners without violating the Department of Transportation regulations on hours of service for drivers. C. Sullivan Aff., ¶ 25. For its ongoing Special Operations trips, some of which last 31-36 hours, TransCor contends that its customers (State of Vermont and California Department of Corrections) request and/or require that the prisoners be delivered without stops overnight. Crouch Aff., ¶¶ 12, 19.

Plaintiffs contend that "contract facilities" would be readily available to house TransCor prisoners overnight. Katsaris Aff., ¶ 25; Brook Decl., ¶¶ 5-6. Plaintiffs also contend that TransCor did not plan or attempt to secure overnight housing – but instead purchased larger transports with sleeping berths for its own employees – to save time and avoid the need to look for overnight facilities. Snell Decl., Ex. 4 (Rion Depo.) at 71-72. Plaintiffs' affiants declare that they know of no other agency or

company which transports prisoners for more than 24 continuous hours rather than housing them overnight in a contract facility. Katsaris Aff., ¶ 15; Brooks Decl., ¶ 6. Defendants' affiants and experts do not address whether any other agencies or companies transport prisoners for 24 continuous hours without housing them overnight.

Plaintiffs' affiants also contend that depriving prisoners of sleep for over 24 hours, keeping prisoners in restraints for 24 hours, and depriving prisoners of sanitation facilities (running water, free use of a toilet) for 24 hours alone and in combination deprive prisoners of basic human needs and violate the custodian's duty to provide humane treatment to prisoners. Atherton Decl., at 7; Katsaris Aff., ¶ 8. Defendants' expert does not address the use of restraints and lack of overnight rest for more than 24 hours directly. Instead, he states: "I do not read any complaint or condition that does not comport with sound correctional practices or are not within the Standard of Care." G. E. Sullivan Report, Opinion 4. TransCor's Vice President and Chief Operating Office asserts that the practice of transporting prisoners in a vehicle or combination of vehicles in excess of 24 hours is "an acceptable and humane practice." C. Sullivan Aff., ¶ 31.

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id*. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there

must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

**DISCUSSION**

**1.     Plaintiffs' Federal Constitutional Claims**

**A.     Legal Standard**

The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials take reasonable measures for the safety of inmates. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety. *See id.* at 834. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citation omitted). Neither negligence nor gross negligence is actionable under § 1983 in the prison context. *See Farmer*, 511 U.S. at 835-36 & n.4.

"[W]hile the eighth amendment proscribes cruel and unusual punishment for convicted inmates, the due process clause of the fourteenth amendment proscribes any punishment of pretrial detainees." *Redman v. County of San Diego*, 942 F.2d 1435, 1440 at n.7 (9th Cir. 1991). "[E]ven though the pretrial detainees' rights arise under the Due Process Clause, the guarantees of the Eighth Amendment provide a minimum standard of care for determining their rights." *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003).

8

### B. Sufficiently Serious

As an initial matter, the Court is required – in light of the class definition – to confine its analysis to determining whether the conditions complained of inflict a constitutional deprivation if their duration is "more than 24 hours." As 24 hours plus one minute is the lowest common denominator for the class, the Court must determine whether depriving prisoners of a bed, and/or holding them in restraints, and/or depriving them of sanitation facilities for 24 hours and one minute is "sufficiently serious" to amount to a constitutional deprivation. Plaintiffs – in their evidence and argument – do not differentiate between prisoners transported under the challenged conditions for 24 hours plus one minute and prisoners transported for longer periods of time. Similarly, plaintiffs' experts do not address or provide evidence regarding the impact of the complained of conditions on prisoners as the time increases above 24 hours. As such, the Court has no evidentiary basis to consider whether prisoners subjected to the complained of conditions for significantly more time than 24 hours have stated a constitutional claim. *But see, Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) ("in considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without these benefits. . . . The longer the prisoner is without such benefits, the closer it becomes to being an unwarranted infliction of pain.").

Plaintiffs contend that alone or collectively, transporting prisoners over 24 hours without allowing for overnight sleep in a bed, while in full restraints and without free access to sanitation facilities, deprives the prisoners of the basic life necessities of sleep, freedom from pain and hygiene. Regarding the lack of overnight rest, plaintiffs rely on cases finding that forcing inmates to sleep on the floor is sufficient to state Eighth and Fourteenth Amendment claims. However, those cases were analyzed in the context of jails and prisons where – either due to an intent to discomfort prisoners or because of overcrowding – inmates were forced to sleep on mattresses on the floor, often in inappropriate areas. *See, e,g., Union County Jail Inmates v. Di Buono*, 713 F.2d 984, 996 (3d Cir. N.J. 1983) (forcing detainees to sleep on mattresses placed on the floor adjacent to the toilet). The Courts found that there was no legitimate government justification for forcing inmates to sleep on the floor, simply because there may not be sufficient capacity in the current facilities. *See, e.g.,Thompson v. Los Angeles*, 885 F.2d 1439, 1448 (9th Cir. 1989) (forcing pretrial detainee to sleep on cement floor for two

9

nights served no legitimate governmental objective); *Thomas v. Baca*, 514 F. Supp. 2d 1201, 1217 (C.D. Cal. 2007) ("The basic humanity inherent in providing access to a bed highlights the practice of forced floor-sleeping as one of the unconstitutional effects of prison overcrowding."); *see also Lyons v. Powell*, 838 F.2d 28, 31 (1st Cir. 1988) ("subjecting pretrial detainees to the use of a floor mattress for anything other than brief emergency circumstances may constitute an impermissible imposition of punishment").

Here, the Court is addressing conditions on a prisoner transport vehicle, a situation that is starkly different from a brick and mortar prison. The parties do not dispute that transportation of these inmates is necessary, and that some deprivations will occur because the prisoners are being transported outside of secure facilities , *e.g.*, restraints must be used for security purposes. As the Ninth Circuit recognized in *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. Ariz. 2000), "[t]he circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." This case, therefore, does not fall within the generally recognized prohibition against forcing pretrial detainees and inmates to sleep on the floor of jails or prisons.[9]

As defendants point out, in deposition testimony, some inmates testified that they were unable to sleep on the transporter, but others said they were able to sleep or nap. *See* Defendants' Ex. 5 at 65-66 (Arno; was not able to get an hour or more of sleep, but could nap 20 or 30 minutes); Ex. 6 at 59 (Kincheloe; was able to nap); Ex. 8 at 67-68 (Cedillo; was able to nap and others able to sleep). TransCor would not play movies from 10:00 p.m. through 6:00 a.m. in order to allow rest, and there is no evidence that TransCor employees tried to prevent inmates from sleeping during their transport. Significantly, plaintiffs' affiants do not state, or provide any support for the proposition, that sleep deprivation for a 24-hour period has any significant ill effects that would cause it, alone, to constitute

---

[9] Nor does this case fall into the category of cases where, either by intentional conduct or by facility design, prisoners are routinely deprived of sleep. *See, e.g., Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996) (denying motion for summary judgment because there was no "legitimate penological justification" for constant illumination of cell where prisoner was placed for six months). The Court agrees with plaintiffs that defendants' cases – addressing situations where temporary jail overcrowding forced authorities to make pretrial detainees sleep on the floor overnight – are largely inapposite. However, those cases underscore the fact that the context in which the Eighth Amendment claim is raised – *e.g.*, in emergency/temporary situations in defendants' cases versus ongoing overcrowding in plaintiffs' cases – is important in determining whether a constitutional deprivation has occurred. Here, the Court is addressing transport vehicles during a 24-hour plus one minute time frame.

**United States District Court**
For the Northern District of California

a significant deprivation of basic human needs.

Plaintiffs also argue that the use of the restraints – leg shackles, handcuffs, belly chains and black boxes to restrict wrist movement – creates an unconstitutional deprivation when used for more than 24 hours. Plaintiffs rely on *Hope v. Pelzer*, 536 U.S. 730 (2002). There, the Supreme Court held that attaching an inmate to a hitching post for seven hours in the sun, during which time he was given water only once or twice and given no access to a bathroom, was an unconstitutional deprivation under the Eighth Amendment. The Court held that use of the hitching post clearly constituted an Eight Amendment violation because, "[d]espite the clear lack of an emergency situation, the respondents knowingly subjected him to a substantial risk of physical harm, to unnecessary pain caused by the handcuffs and the restricted position of confinement for a 7-hour period, to unnecessary exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation," and was "punitive treatment" amounting "to gratuitous infliction of 'wanton and unnecessary' pain." *Id.*, at 738. Here, there is no evidence that the use of the restraints is punitive or gratuitous. The use of the extensive restraints is a policy TransCor adopted to comply with the requirements of the Jeanna Act, *see* 42 U.S.C. § 13726,[10] and to ensure security while transporting prisoners outside of secure facilities, where accidents and other events that heighten the risk of prisoner escape can occur.

Plaintiffs also rely on *Myers v. Transcor America, LLC* 2010 WL 3824083 (M.D.Tenn. 2010). In *Myers,* a prisoner brought an Eighth Amendment excessive force claim based on TransCor's "custom of placing and leaving inmates in restraints in such a manner that the restraints caused inmates to suffer unnecessary pain and physical injury which were obvious and apparent and for which no relief was offered by the transport officers." *Id*., *4. The plaintiff and other affiants submitted evidence that although they each suffered extreme swelling, bleeding and other obvious ill effects from the restraints, the TransCor employees ignored the complaints and failed to take any action to provide relief. Here, plaintiffs' claim is that the use of the restraints for 24 hours, by itself, is the constitutional deprivation. Plaintiffs do not allege – or submit any evidence – that use of the restraints for 24 hours will necessarily

---

[10] Jeanna's Act subjects "private prisoner transport companies" to various regulations "in order to enhance public safety." 42 U.S.C. § 13726(5).

11

cause extreme swelling, bleeding, or other injuries on a classwide basis. Additionally, while there is evidence that some of the class members' restraints were too tight and/or caused swelling, chafing, and abrasions there are *no* allegations that TransCor had a custom or policy of ignoring prisoner complaints about excessive swelling or abrasions from ill-fitting restraints. The *Myers* analysis of the individual excessive force claim, therefore, is inapposite.

In *Bain v. Transcor America, LLC*, 2009 WL 562586 (M.D.Tenn. 2009), the Court denied a motion to dismiss plaintiff's Eighth Amendment claims that he "suffered pain for over 50 straight hours while restrained, was denied prescribed medication, and suffered swelling, bruising, and lacerations on his wrists, legs, and ankles which did not abate for nearly two weeks." *Id.*, *7. The Court noted that plaintiff had alleged that the particular restraints, the tightness of the restraints, and their refusal to loosen any restraints were mandated by TransCor's policies. Here, the only policy at issue is the use of restraints. There are no classwide allegations of use of "overly tight" restraints or an alleged policy to refuse to loosen restraints. *Bain*, therefore, is likewise inapposite.[11]

The Court finds that use of the restraints at issue for a period exceeding 24 hours, by itself and given the context of transporting prisoners outside of secure facilities, is not an unconstitutional deprivation under the Eighth Amendment. For example, in *Key v. McKinney*, 176 F.3d 1083, 1085 (8th Cir. 1999) a plaintiff was put in restraints for 24 hours as a disciplinary measure; he complained that restraints made it difficult to sleep and were painful, that it was difficult to take care of bodily functions, and that his requests to have handcuffs loosened were denied. The Court found that he failed to state an Eighth Amendment claim. The Court noted that he was provided with bedding, food, or bathroom facilities, and he was checked on by a nurse and guard at regular intervals. The Court concluded that, "[w]hile the shackles made it more difficult to sleep and relieve himself, he has not shown that he suffered a serious deprivation of 'the minimal civilized measure of life's necessities.'" *Id.*, at 1086.

---

[11] Plaintiffs also rely on *Anderson-Bey v. District of Columbia*, 466 F. Supp. 2d 51 (D.D.C. 2006). In that case, the Court denied summary judgment based on plaintiffs' allegations that "each prisoner's restraints were applied far too tightly, with the handcuffs cutting off circulation and digging into and sometimes cutting the skin. . . . The restraints remained too tight throughout the trip, despite the prisoners' complaints." *Id.*, at 58-59. Here, the complaint is that the restraints were applied, not that they were applied too tightly or otherwise manipulated in order to harm the plaintiffs. Similarly, the allegation that prisoner complaints were ignored, is not made on a class-wide basis here.

1 Here, while the plaintiffs did not have bedding, they had access to food, drinking water, and the toilet
2 (restricted to stops). The prisoners also had their restraints checked on by TransCor employees during
3 stops and could have asked employees to loosen the restraints if significant problems occurred.

4 As to the claims of inadequate access to sanitation, the Court finds that the allegations do not
5 result in a constitutional deprivation for a period of 24 hours plus one minute. Plaintiffs do not dispute
6 that the transports stopped every 3.5 to 4 hours. Plaintiffs do not dispute that prisoners were able to use
7 the toilet during any of the stops, except for plaintiff Pinedo's complaint that TransCor employees
8 refused to remove his restraints so that he could defecate. Snell Decl., Ex. I at 7.[12] There were
9 situations where the chemical toilet on board was dirty and not cleaned. However, the question before
10 the Court is not whether particular class members suffered a constitutional deprivation because they
11 were unable to use the toilet at a specific time. Instead, the question is whether TransCor's policy of
12 not allowing prisoners at-will use of the toilets, instead restricting use to every 3.5 to 4 hours, and
13 TransCor's failure to provide running water, soap, toothbrushes and a change of clothes over a period
14 of 24 hours plus one minute imposes a constitutional deprivation of minimal hygiene. The Court
15 concludes it does not.[13]

16 Plaintiffs' reliance on *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir. 1985) is misplaced. There,
17 the Ninth Circuit found "that various aspects of the penitentiary's 'old, dilapidated, and ill-maintained'
18 physical plant," including unsatisfactory plumbing, vermin infestation and unavailable or inadequate
19 cell cleaning supplies violated the Eighth Amendment. *Id.*, at 783. Similarly, in *Keenan v. Hall*, 83
20 F.3d 1083, 1091 (9th Cir. 1996), the Ninth Circuit held that requiring an indigent prisoner to purchase
21 his own hygiene supplies created a "sanitation" claim under the Eighth Amendment, precluding
22 summary judgment. These cases are wholly inapposite to the case at hand, which deals with a 24-hour

---

[12] Pineda's testimony is ambiguous on why he was not allowed to defecate. The interrogatory responses cited by plaintiffs reference Pineda's complaints about "noise" and not being let off the transport, in conjunction with his inability to defecate. *Id*. at 5, 7-10. Another class member testified that because the toilet was locked while the vehicle was in transit, fellow passengers soiled themselves. Snell Decl., Ex. LL.

[13] The Court notes that a lack of access to running water and other hygiene measures for longer periods of time raise different questions in terms of deprivation of rights, but the Court cannot reach those questions here in light of the posture of and evidence in this case.

1 plus one minute deprivation while prisoners are in transit. *But see Walker v. Sumner*, 14 F.3d 1415,
2 1421 (9th Cir. 1994) (denial of adequate clothing might constitute Eighth Amendment violation);
3 *Toussaint v. McCarthy*, 597 F. Supp. 1388, 1409 (N.D. Cal. 1984) ("leaking pipes and fixtures, clogged
4 drains, rotting sewer lines, and other plumbing and sewage deficiencies are a major cause of the serious
5 health hazards").[14]

6 Plaintiffs argue that even if none of the three conditions in isolation amounts to a constitutional
7 deprivation, the combination of them creates a "mutually enforcing effect" that deprived plaintiffs of
8 the basic human needs of sleep and adequate shelter. Plaintiffs' Motion at 18. Plaintiffs rely on *Wilson*
9 *v. Seiter*, 501 U.S. 294, 304 (1991). There, the Supreme Court explained that "[s]ome conditions of
10 confinement may establish an Eighth Amendment violation 'in combination' when each would not do
11 so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single,
12 identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night
13 combined with a failure to issue blankets." Here, however, the sanitation conditions complained of do
14 not combine – either with the lack of sleep or the use of restraints – to cause the deprivation of a single
15 identifiable need over the 24-hour plus one minute period.

16 The combination of use of restraints and being continuously transported for 24 hours or more
17 has a nexus with respect to a prisoner's ability to rest comfortably during a 24-hour period, as both sides
18 admit that the restraints are uncomfortable. However, as noted above, plaintiffs do not dispute that
19 TransCor's policy requires TransCor employees to check on the restraints for fit and for obvious signs

---

[14] The two class certification cases relied on by plaintiffs are not apposite to the question now before this Court -- that is, the determination on summary judgment whether plaintiffs have shown that the conditions inflicted on them constitute unconstitutional deprivations. Those cases are also distinguishable on their facts. In *Tyler v. Suffolk County*, 253 F.R.D. 8 (D. Mass. 2008), prisoners were housed in cells that were not equipped with toilets or sinks. When the inmates were locked in at night, they could use the toilets only if they were permitted to do so by the guards. The inmates alleged "that, due to inattention (and, possibly, malice) of the guards on duty, their bathroom access was unreliable. . . ." *Id*., at 9. Here, however, the issue is not inattention or malice of the guards, but instead the policy of allowing inmates to use the toilet only every 3.5 to 4 hours during stops. Moreover, given the context at issue – prisoners being moved outside secure facilities, transporters in motion, and prisoners in restraints – the Court does not find *Tyler* persuasive for purposes of determining the merits of plaintiffs' deprivation claim. Similarly, while the Court in *Dunn v. City of Chicago*, 231 F.R.D. 367 (N.D. Ill. 2005), indicated it would certify a class of pretrial detainees who were held for an "unlawful period of time (greater than 16 hours) in interrogation rooms that lacked the most basic amenities," including access to food service and sleeping facilities, the case does not provide support for plaintiffs' summary judgment claims here.

of harm every time transporters stop. If a prisoner complains about discomfort and there are signs of swelling or ill-fitting restraints, TransCor employees are authorized, with approval from their supervisors, to take steps to address that discomfort. The Court finds that even in combination, the lack of sleep overnight and use of full restraints – with periodic checks – does not constitute an unconstitutional deprivation when applied for 24 hours plus one minute. *See, e.g., Key v. McKinney*, 176 F.3d 1083 at 1085.

For the foregoing reasons, the Court finds that the conditions plaintiffs complain of – in the context of transportation of prisoners and over a 24-hour plus one minute period – do not, without more and on a class-wide basis, constitute unconstitutional deprivations under the Eighth or Fourteenth Amendments. To be clear, the Court does not find that the conditions alleged, if imposed for periods exceeding 24 hours or if imposed in different manners or with specific injuries, could not constitute unconstitutional deprivations to individual prisoners. As a class–wide matter, however, and on the record presented, the Court does not find that plaintiffs have established or can establish a constitutional violation.[15]

### 2.     **Plaintiffs' Bane Act Claims**

California's Bane Act, California Civil Code § 52.1, provides a cause of action for interference with constitutional rights. However, as the Court has granted defendants' motion for summary judgment finding that the plaintiffs have not demonstrated classwide constitutional deprivations by being subjected to the complained of conditions for 24 hours plus one minute, plaintiffs' classwide Bane Act claims must likewise fail.

---

[15] In light of the above conclusion, the Court need not reach the issue of defendants' deliberate indifference or penological necessity.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiffs' motion for partial summary judgment and GRANTS defendants cross-motion for partial summary judgment on plaintiffs' class claims.[16]

**IT IS SO ORDERED.**

Dated: August 8, 2012

SUSAN ILLSTON
United States District Judge

---

[16] Defendants also move for summary judgment as to the claims of named plaintiff William Tellez. Defendants argue that Tellez was a resident of Nevada when he was arrested in 2002, and therefore, even though he was imprisoned in California during early February 2006 – when his last transport by TransCor occurred – he is not entitled to tolling under California's Code of Civil Procedure § 352.1. *Compare* Defendants' Cross-Motion at 1, fn. 1 *with* Plaintiffs' Opposition at 23. However, neither side provides the Court with any authority on how the residence of a prisoner is determined for purposes of applying a statute of limitations defense. Therefore, defendants' motion as to any individual claim plaintiff Tellez may have is DENIED.